## J. H. WENDLER, v. STATE.

175 So. 255.
Opinion Filed June 4, 1937.

*Bart A. Riley,* for Petitioner.

PER CURIAM.—In this case the following opinion and judgment of the Circuit Court of Dade County is adopted as the opinion of the Supreme Court in this case and on the

authority thereof the petition for writ of *certiorari* should be and is hereby denied:

"The plaintiff in error, J. H. Wendler, was informed against in the Criminal Court of Record, Dade County, Florida, for assault with intent to murder and was convicted of aggravated assault. The testimony is voluminous, but the case can be decided by a few salient events.

"One J. H. Holder, an employee of the Miami News, went to Wendler's place of business to collect a bill. There was an altercation between them and Wendler applied two vulgar epithets to him. He followed him to Holder's car and spat on his face. Holder returned to the News office, reported the incident to an employee and friend named North and to his roommate and friend, R. L. Downey. He also reported the matter to Mr. Ross A. Reeder, Publisher of the Daily News. Holder and North in one car returned to Wendler's place of business and Downey in another car stopped about thirty feet away. Holder and North went in Wendler's shop and made a vicious assault on him. During the melee, Downey appeared upon the scene and took a hand in the assault. The combatants were separated by bystanders, and Holder, North and Downey were either persuaded to go or pushed out of the store on the sidewalk. By this time a small crowd had gathered, and North was slowly strolling away in company with a Mr. Spring. Downey was between the crowd gathered near the curb and the door to Wendler's shop. From all the testimony in the case, except that of Wendler himself, the difficulty was over. Wendler testified that while Downey, North and Holder were outside the shop on the sidewalk after the first encounter, Downey 'called the other fellow back,' says, 'come on back and let's go in and get the old S.O.B. and wreck his shop'. This is not cor-

roborated by any of the witnesses, not even those for the defense.

"I cannot accept the contention of the State that Holder, after having applied to him two opprobrious epithets, and having had his face spat upon, went back to the News Office and returned to Wendler's place with his roommate and chum Downey and another employee of the News, North, on a friendly mission. It would make too much of a poltroon of Holder to accept such a theory. I am convinced that he went back to Wendler's place of business with his friends to be avenged for the indignities that had been heaped upon him. They inflicted some punishment upon Wendler and would have probably punished him more severely had the fight not been interrupted by bystanders. Up to this point Holder, North and Downey were the aggressors and had the blow that Downey received been delivered during the fight in the shop, Wendler would have been justified; but the fight was over, the three former aggressors were on the sidewalk, one of them strolling away.

"Wendler admits that he went 'back to the back of the plant', picked up a pinch-bar and went outside of his office to the sidewalk. He testified that he did not have the pinch-bar raised when Downey rushed at him, but others related the manner in which he was holding it testified that it was raised in a menacing manner and it appears that he was near enough to Downey to have delivered a severe arms-length blow. There was a crowd behind Downey, whom it appears ducked under Wendler's arms to avoid full force of the blow if possible, and if not, at least to lessen its effect. A person about to be struck by a deadly weapon does not have to stand and receive the blow, and if he thinks he can avoid it or lessen its force by rushing in under the weapon or under the arms of the aggressor, does

not thereby become the attacker. After the first difficulty, Wendler admits that he went back into the back of his place. He was out of the way of the three men who had previously attacked him and had he remained in his shop the injury would not have occurred. It will be noted that Wendler says 'I did not see them start to come back' and that 'Downey started coming alone, as I later found out.' It is clear from this that when he went back and got the pinch-bar he did not see any of them coming back to his shop and what he testified to about Downey was something that he learned later. Had Wendler gone back into his shop and gotten the pinch-bar and remained there and had Downey come back into the shop and Wendler then struck him, it would have been justifiable; but when Wendler got the pinch-bar and went out of his shop onto the sidewalk and struck Downey, he became the aggressor and his conviction is warranted by the testimony.

"Wendler is a man sixty-eight years of age, blind in one eye, and a sufferer from asthma. He was assaulted and beaten in his own place of business by three men. Under such circumstances he was hardly in a frame of mind to distinguish when he ceased to be the attacked and became the attacker. The law, however, draws the distinction, and by it the Court must be guided. The circumstances that the three men who assaulted Wendler in his place of business have gone unpunished, cannot be considered by the Court in passing upon the question before it.

"The testimony of the State's witnesses warranted the verdict of aggravated assault, if the jury rejected Wendler's testimony and accepted that of the State's witnesses, and it is not for this Court to say that they would have rejected the testimony of the State's witnesses and accepted that of Wendler.

"The judgment is affirmed.

"Dated this 4th day of January, A. D. 1937, at Miami, Dade County, Florida.

."JEFF'N B. BROWNE,
Circuit Judge."

. *Certiorari* denied.

ELLIS, C. J. and TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.